## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

SERGIO NAVARRO, THERESA
GAMAGE, DAYLE BULLA, JANE
KINSELLA, and ERICA McKINLEY, on
their own behalf, on behalf of all others
similarly situated, and on behalf of the
Wells Fargo & Company Health Plan and
its component plans,

                Plaintiffs,

     v.

WELLS FARGO & COMPANY,

                Defendant.

No. 0:24-cv-03043-LMP-DLM

## REPLY MEMORANDUM OF LAW IN FURTHER
## SUPPORT OF DEFENDANT WELLS FARGO & COMPANY'S
## MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...............................................................................1

ARGUMENT.........................................................................................................2

I.   PLAINTIFFS FAIL TO SATISFY ARTICLE III'S STANDING
     REQUIREMENTS ........................................................................................2

     A.   Plaintiffs Lack Standing To Pursue Plan-Wide Relief Under
          ERISA Section 502(a)(2) ...................................................................2

          1.   Increased Premiums Are Not A Cognizable Injury ......................2

          2.   Wells Fargo's Prior Contribution Allocations Do Not
               Render Plaintiffs' Alleged Premium Injury Non-
               Speculative ...........................................................................3

          3.   Plaintiffs' Contention That The Court Must Treat The
               But-For World As Unchanged In Assessing Standing
               Is Unsupported ......................................................................4

          4.   Plaintiffs' Redressability Argument Fails...............................5

     B.   Plaintiffs Lack Standing To Pursue Individual Claims Under
          ERISA Section 502(a)(3) ...................................................................6

     C.   Amicus' Arguments Are Repetitive And Unhelpful................................8

II.  PLAINTIFFS' FIDUCIARY-BREACH AND PROHIBITED
     TRANSACTION CLAIMS SHOULD BE DISMISSED FOR
     FAILURE TO STATE A CLAIM......................................................................9

     A.   The Amended Complaint Does Not Challenge Fiduciary
          Conduct .............................................................................................9

     B.   Plaintiffs Have Not Pled Plausible Fiduciary-Breach Claims...................11

          1.   Plaintiffs Have Not Identified Meaningful Benchmarks
               For Prescription Drug Costs.........................................................12

          2.   Plaintiffs Have Not Identified Meaningful Benchmarks
               Related To Administrative Fees....................................................13

3.    Plaintiffs Have Not Pled Plausible Allegations Of An
Imprudent Process ............................................................................ 14

C.    Plaintiffs' Prohibited Transaction Claims Should Be Dismissed ................ 15

CONCLUSION ...................................................................................................... 16

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Albert v. Oshkosh Corp.*,
    47 F.4th 570 (7th Cir. 2022) ........................................................................ 14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................... 15

*Barrett v. O'Reilly Auto., Inc.*,
    112 F.4th 1135 (8th Cir. 2024) ............................................................... 13-14

*BCBS of N.C. v. Rite Aid Corp.*,
    519 F. Supp. 3d 522 (D. Minn. 2021) ........................................................ 7

*Camire v. Alcoa USA Corp.*,
    2025 WL 947526 (D.D.C. Mar. 28, 2025) ............................................. 7-8

*CFPB v. TCF Nat'l Bank*,
    2017 WL 6187462 (D. Minn. Apr. 26, 2017) ........................................... 8

*CIGNA Corp. v. Amara*,
    563 U.S. 421 (2011) .................................................................................... 8

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) .................................................................................... 9

*Davis v. Wash. Univ. in St. Louis*,
    960 F.3d 478 (8th Cir. 2020) ................................................................... 13

*Doe One v. CVS Pharmacy, Inc.*,
    348 F. Supp. 3d 967 (N.D. Cal. 2018),
    *aff'd in relevant part, vacated in part on other grounds, remanded*,
    982 F.3d 1204 (9th Cir. 2020) ............................................................ 10, 11

*EEOC v. R.G. &. G.R. Harris Funeral Homes, Inc.*,
    884 F.3d 560 (6th Cir. 2018) ..................................................................... 8

*Fritton v. Taylor Corp.*,
    2023 WL 5348834 (D. Minn. Aug. 21, 2023) ...................................... 14-15

*Glanton ex rel. ALCOA Prescription Drug Plan v. Advance PCS Inc.*,
    465 F.3d 1123 (9th Cir. 2006) ............................................................... 5, 6

*Hawkins v. Cintas Corp.*,
    32 F.4th 625 (6th Cir. 2022) ............................................................. 5

*In re Mut. Funds Inv. Litig.*,
    529 F.3d 207 (4th Cir. 2008) ............................................................ 6

*In re Xyrem (Sodium Oxybate) Antitrust Litig.*,
    555 F. Supp. 3d 829 (N.D. Cal. 2021) ............................................. 3

*Knudsen v. MetLife Grp., Inc.*,
    117 F.4th 570 (3d Cir. 2024) ........................................................ 4, 6

*Lewandowski v. Johnson & Johnson*,
    2025 WL 288230 (D.N.J. Jan. 24, 2025) ......................................... 7

*Matney v. Barrick Gold of N. Am.*,
    80 F.4th 1136 (10th Cir. 2023) ....................................................... 15

*Matousek v. MidAmerican Energy Co.*,
    51 F.4th 274 (8th Cir. 2022) ......................................... 3, 11, 12, 14

*Moeckel v. Caremark, Inc.*,
    622 F. Supp. 2d 663 (M.D. Tenn. 2007) ....................................... 10

*Mulder v. PCS Health Sys., Inc.*,
    432 F. Supp. 2d 450 (D.N.J. 2006) ............................................... 10

*Segura v. Fed. Nat'l Mortg. Ass'n*,
    2013 WL 3034096 (D. Minn. June 17, 2013) ............................... 14

*Thole v. US Bank N.A.*,
    590 U.S. 538 (2020) ......................................................................... 7

**STATUTES**

ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) ....................................... 2, 3

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) .......................................... 6

**OTHER AUTHORITIES**

I.R.S. Priv. Ltr. Rul. 200727017, 2007 WL 1957402 (July 6, 2007) .................................. 9

## PRELIMINARY STATEMENT

Plaintiffs' second attempt to establish Article III standing and plead plausible claims fares no better than their first. Plaintiffs' Opposition Brief confirms that they lack standing because they fail to allege a nonspeculative injury that is plausibly connected to a viable claim. While Plaintiffs claim to have suffered injury in the form of higher premiums and out-of-pocket costs for prescription drugs, they fail to plausibly connect those alleged harms to their claim that the Plan overpaid for prescription drugs and fees charged by its pharmacy benefits manager ("PBM"). In addition, Plaintiffs' allegation that they paid too much in premiums and for prescription drugs fails because they have no legally cognizable interest in a particular level of benefits and their alleged injuries are too speculative to show concrete harm.

Plaintiffs' Opposition Brief also confirms that they have not stated viable fiduciary-breach or prohibited transaction claims. All of Plaintiffs' claims fail because Plaintiffs challenge the Plan's design, i.e., settlor, not fiduciary, conduct. Even if Wells Fargo were acting in a fiduciary capacity, Plaintiffs' fiduciary-breach claims fail because they do not allege that comparable plans incurred lower costs for comparable prescription drug programs, and no inference of a breach can be drawn from their allegations regarding the costs of certain components of the program. Finally, Plaintiffs' prohibited transaction claims also fail because they are conclusory.

For any or all of these reasons, the Amended Complaint should be dismissed without leave to replead.

**ARGUMENT**

**I.     PLAINTIFFS FAIL TO SATISFY ARTICLE III'S STANDING REQUIREMENTS.**

Plaintiffs purport to establish Article III standing because they allegedly were harmed by paying (1) increased healthcare premiums, and (2) increased out-of-pocket costs for prescription drugs. (ECF No. 85 at 7.) Neither theory suffices.

**A.     Plaintiffs Lack Standing To Pursue Plan-Wide Relief Under ERISA Section 502(a)(2).**

Plaintiffs concede that section 502(a)(2) is not a vehicle for pursuing individual relief. (*Id.* at 12.) They nevertheless contend they have satisfied Article III's requirements by alleging they paid higher premiums due to the Plan's alleged overspending on prescription drug costs and administrative fees. (*Id.* at 13-23.) This theory again fails to establish injury, causation, and redressability because the Plan vests Wells Fargo with sole discretion to set participant contributions at any amount based on several factors unrelated to prescription drug benefits, and to require participants to fund all Plan expenses, even those unrelated to their individual benefits. (ECF No. 79 at 11-12; *see* ECF No. 57 at 20-22.) Plaintiffs' arguments to the contrary, purportedly based on "historical data, expert testimony, and empirical research" (ECF No. 85 at 14), are without merit.

**1.     *Increased Premiums Are Not A Cognizable Injury.***

Plaintiffs' contention that increased premiums constitute injury for standing purposes (*id.* at 13) is meritless because, as discussed (ECF No. 79 at 11), they are not a

cognizable injury under section 502(a)(2).[1] Plaintiffs' cases (ECF No. 85 at 19) do not hold otherwise and do not even address ERISA claims.

        2.    *Wells Fargo's Prior Contribution Allocations Do Not Render Plaintiffs' Alleged Premium Injury Non-Speculative.*

Plaintiffs contend that they have pled a non-speculative injury by alleging that "employee contributions were calculated as a *pro rata* share of the total benefits cost." (*Id.* at 18.) Plaintiffs are wrong and, contrary to their assertion (*id.* at 20), Wells Fargo denies that there is any such connection.

First, as the Court previously explained, "this argument assumes that Wells Fargo would maintain the 75-25 employer-employee contribution ratio, and nothing in the Plan requires Wells Fargo to do so." (ECF No. 57 at 23.) Indeed, the contribution allocation has *not* been "remarkably stable." (ECF No. 79 at 15 n.6.)[2]

Second, Plaintiffs' attempt at connecting overall Plan spending and participant contributions (ECF No. 85 at 13-18) does nothing but dress up the same standing theory the Court already rejected without making it any less speculative. (ECF No. 79 at 9, 14-15; *see* ECF No. 57 at 20-22.)[3] This is again because the Plan vests Wells Fargo with sole

---

[1] Nor are they actionable under ERISA because setting contribution amounts are plan design decisions. (ECF No. 79 at 19; *see* Point II.A, *infra*.)

[2] Contrary to Plaintiffs' contention (ECF No. 85 at 22 n.5), courts routinely consider Form 5500s at the pleading stage, *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 279 (8th Cir. 2022), particularly where, as here, the Amended Complaint expressly relies on them.

[3] Plaintiffs' reliance on *In re Xyrem (Sodium Oxybate) Antitrust Litigation*, 555 F. Supp. 3d 829 (N.D. Cal. 2021) (ECF No. 85 at 15, 22) is misplaced because that court considered industry custom while evaluating the plausibility of antitrust claims, whereas

discretion to set participant contributions at any amount. *See* p.2, *supra*. The contrary opinions of Plaintiffs' expert should not be assumed true (ECF No. 79 at 5-6), and their cited cases (ECF No. 85 at 16) do not hold otherwise.

Third, Plaintiffs' effort to distinguish Wells Fargo's cited authorities (*id.* at 14, 18-19) misses the point because the courts in all of these cases found similar allegations insufficient to establish injury. Plaintiffs again attempt to distinguish *Knudsen v. MetLife Group, Inc.*, 117 F.4th 570 (3d Cir. 2024), but as the Court observed, "*Knudsen* characterized the plaintiffs' allegations in exactly the way Plaintiffs framed theirs" (ECF No. 57 at 23 n.10) (cleaned up). Nothing in the Amended Complaint alters the Court's conclusion that *Knudsen* provides a "close[] analogy" here. (*Id.* at 17.) The Ninth Circuit did not identify plausible allegations, but rather summarized plaintiffs' insufficient allegations about the method of calculating contributions. The Sixth Circuit assumed plan sponsors would pass on savings to participants. The Second Circuit deemed insufficient plaintiffs' allegations that they might have received better benefits if defendant had not misappropriated plan assets.

3.    *Plaintiffs' Contention That The Court Must Treat The But-For World As Unchanged In Assessing Standing Is Unsupported.*

Plaintiffs wrongly cast as "legally irrelevant" Wells Fargo's argument that even if the Plan lowered its prescription-drug-related spending, it could have maintained or increased participant contributions. (ECF No. 85 at 20.) They instead argue that, in

---

here, purported industry practice is irrelevant since the Plan vests Wells Fargo with sole discretion.

assessing hypothetical scenarios, "the but-for scenario differs from what actually happened only with respect to the harmful act." (*Id.* (cleaned up).) None of Plaintiffs' authorities (*id.* at 20-21) mention Article III standing, but rather address damages calculations. This distinction is significant because assessing damages presupposes liability, which cannot be imposed without standing. The two clearly require separate analyses.

### 4.    *Plaintiffs' Redressability Argument Fails.*

Plaintiffs contend that their claims are redressable because "Plaintiffs will indirectly benefit from a remedy accruing to the Plan." (*Id.* at 24.)[4] But, as the Court already found (ECF No. 57 at 23-24), this argument "stumbles on the same obstacle": Wells Fargo has "sole discretion" to set participant contribution rates and cannot be forced to reduce them. That some Plaintiffs are former Plan participants (ECF No. 85 at 11-12) is irrelevant (ECF No. 79 at 13-14). *See Glanton ex rel. ALCOA Prescription Drug Plan v. Advance PCS Inc.*, 465 F.3d 1123, 1125 (9th Cir. 2006) ("[N]or would any one-time award to the plans for past overpayments inure to the benefit of [former and current] participants.").

Plaintiffs next argue that "fiduciaries cannot avoid accountability by speculating that they might not equitably allocate plan assets to former participants," citing cases brought by participants in 401(k) individual account *defined contribution plans*. (ECF

---

[4] Plaintiffs' reliance on *Hawkins v. Cintas Corp.*, 32 F.4th 625 (6th Cir. 2022) is misplaced because the court did not address standing but rather determined plaintiffs' claims were not "individual claims" subject to arbitration under individual employment agreements.

No. 85 at 24-25.) Critically, those courts limited their rulings to defined contribution plans because defined benefit plans—which are "closely analogous" to the Plan (ECF No. 57 at 15)—have a unique "redressability problem"; namely, whether relief will remedy individual participants' injuries is speculative because any recovery goes to the plan, *In re Mut. Funds Inv. Litig.*, 529 F.3d 207, 217-18 (4th Cir. 2008).

Finally, Plaintiffs' efforts to distinguish Wells Fargo's authorities (ECF No. 85 at 26) are unpersuasive. *In re Mutual Funds Investment Litigation* does not address Wells Fargo's cited authorities, contrary to Plaintiffs' assertion. In *Glanton*, *Winsor*, and *David*, the plaintiffs failed to plausibly allege harm just like Plaintiffs here. (ECF No. 79 at 13; *see* pp.2-4 *supra*.) That the plan sponsors were not defendants in *Glanton* and *Winsor* is irrelevant because, even if the plan sponsors were sued, they still had broad discretion (like Wells Fargo) such that recovery to the plan would not necessarily benefit the plaintiffs. (ECF No. 57 at 24.) Notably, in *Knudsen*, plaintiffs sued the plan fiduciary (not an independent actor), and sought relief that would have flowed to the trust. 117 F.4th at 574.

## B.    Plaintiffs Lack Standing To Pursue Individual Claims Under ERISA Section 502(a)(3).

Plaintiffs contend that they have standing to pursue individual claims under section 502(a)(3) because Wells Fargo's conduct increased their premiums and out-of-pocket costs. (ECF No. 85 at 8-24.) The Court previously rejected this theory (ECF No. 57 at 24-25), and it should do so again.

First, Plaintiffs fail to allege concrete injury caused by Wells Fargo based on increased premiums, *see* Point I.A, *supra*.

Second, Plaintiffs' allegations of direct harm based on higher out-of-pocket costs (ECF No. 85 at 10) fail because Plaintiffs do not dispute they received all benefits due under the Plan, and they have no legally protected interest in any level of employer-provided benefits (ECF No. 79 at 17-18).[5] Plaintiffs' reliance on cases involving defined contribution plans fails for the reasons stated above. *See* p.5, *supra*. Plaintiffs' attempts to distinguish *Knudsen* and *Gonzalez de Fuente* (ECF No. 85 at 9) also fail because, like here, those plaintiffs (ECF No. 79 at 17-18) alleged they paid too much.

Plaintiffs also mistakenly contend that Wells Fargo "ignores" that Plaintiff McKinley participates in the Plan through COBRA and pays 100% of premium contributions. (ECF No. 85 at 12, 22-23.) But, as discussed (ECF No. 79 at 16), this allegation is premised on the bare allegation that the Plan's costs should have been lower and does not cure Plaintiffs' standing deficiencies.

Lastly, Plaintiffs' contention that they seek equitable surcharge (ECF No. 85 at 11) does not obviate the requirement that they first establish standing. *See, e.g.*, *Thole v. US Bank N.A.*, 590 U.S. 538, 544 (2020) (rejecting argument that plaintiffs had standing for section 502(a)(3) claim because ERISA permits suits for equitable relief); *Camire v.*

---

[5] Plaintiffs' reliance on *BCBS of North Carolina v. Rite Aid Corp.*, 519 F. Supp. 3d 522 (D. Minn. 2021) and *Lewandowski v. Johnson & Johnson*, 2025 WL 288230 (D.N.J. Jan. 24, 2025) (ECF No. 85 at 7, 9) is misplaced. In the former, plaintiffs claimed they were charged higher prices than contractually promised; in the latter, the court did not address the arguments advanced here.

*Alcoa USA Corp.*, 2025 WL 947526, at *5 (D.D.C. Mar. 28, 2025) ("[C]laims for equitable relief under ERISA are still subject to the ordinary requirements of standing.").[6]

### C.   Amicus' Arguments Are Repetitive And Unhelpful.

Amicus, who has no special interest in this case, improperly parrots three of Plaintiffs' arguments and offers one argument not advanced by Plaintiffs. None of Amicus' arguments warrants denying Wells Fargo's motion to dismiss.

First, like Plaintiffs, Amicus contends that: (i) Wells Fargo's conduct allegedly caused Plaintiffs to pay more for their benefits, (ii) selecting a PBM is a fiduciary act, and (iii) case law addressing defined contribution plans provides an "appropriate analogy" for assessing standing. (ECF No. 88-1 at 3.) Courts routinely decline to consider amici's arguments where, as here, they are duplicative of parties' arguments or otherwise unhelpful. *See, e.g.*, *CFPB v. TCF Nat'l Bank*, 2017 WL 6187462, at *1-2 (D. Minn. Apr. 26, 2017). Because Amicus' arguments offer no additional perspective or relevant information, they should be rejected.

Second, unlike Plaintiffs, Amicus argues that "fiduciary mismanagement can cause concrete injury . . . by diminishing trust assets." (ECF No. 88-1 at 3.)[7] Courts routinely decline to credit arguments not advanced by merits counsel. *See, e.g.*, *EEOC v. R.G. &. G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560, 585 n.8 (6th Cir. 2018).

---

[6] Furthermore, Plaintiffs have not plausibly alleged actual harm as required to obtain equitable surcharge. *CIGNA Corp. v. Amara*, 563 U.S. 421, 444 (2011).

[7] Amicus also spills considerable ink distinguishing a case (ECF No. 88-1 at 4, 10-12) on which neither party relies.

Regardless, Plaintiffs have no interest in the VEBA's assets (ECF No. 31-2 (Plan) § 5.2(c)) such that any potential decrease in value injures them. That Wells Fargo's conduct "can cause injury" in the future—because Plan participants "may benefit from surplus assets" *if* the VEBA is terminated (ECF No. 88-1 at 7-8)—hardly suffices to establish that this threat is "certainly impending," as required to establish Article III injury, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Furthermore, plan sponsors have historically had flexibility to repurpose VEBA assets for different benefits or different participants without triggering the excise tax that applies upon a reversion to an employer. *See, e.g.*, I.R.S. Priv. Ltr. Rul. 200727017, 2007 WL 1957402 (July 6, 2007). Thus, even if excess assets remain, they would not necessarily flow to participants.

## II.    PLAINTIFFS' FIDUCIARY-BREACH AND PROHIBITED TRANSACTION CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

All of Plaintiffs' claims should be dismissed because the decision to enter into a PBM agreement is a plan design decision not subject to ERISA's fiduciary duties. Even if Wells Fargo were acting in a fiduciary capacity, Plaintiffs' allegations do not permit an inference of breach, and their prohibited transaction claims are conclusory.

### A.    The Amended Complaint Does Not Challenge Fiduciary Conduct.

Plaintiffs concede that design and funding decisions are not fiduciary acts. (ECF No. 85 at 29-30.) They nevertheless contend that selecting a PBM is a fiduciary decision. (*Id.* at 30.) Plaintiffs are wrong.

9

All authorities addressing the issue have concluded that entering a PBM agreement and adopting a formulary are settlor, not fiduciary, acts. (ECF No. 79 at 20.) Plaintiffs contend these authorities are "underdeveloped dicta in distinguishable cases." (ECF No. 85 at 31.) To the contrary, in *Doe One v. CVS Pharmacy, Inc.*, the court held the plan-sponsor-defendants' "decision to enter into the PBM Agreement with [the PBM], and to agree to the various terms contained therein, was a plan design decision, exempt from fiduciary review" and granted the motion to dismiss. 348 F. Supp. 3d 967, 1001-02 (N.D. Cal. 2018) (citation omitted), *aff'd in relevant part, vacated in part on other grounds, remanded*, 982 F.3d 1204 (9th Cir. 2020). Similarly, in *Moeckel v. Caremark, Inc.*, the court held the plan sponsor's "contracting decisions as to what, and how, to pay [the PBM] for the services rendered under the PBM Agreements, as well as what formulary(ies) and drug interchange programs to adopt for its plan relate to plan design decisions, which are also non-fiduciary in nature." 622 F. Supp. 2d 663, 693 (M.D. Tenn. 2007). That conclusion was essential to the court's determination that the PBM was not acting in a fiduciary capacity. *Id.* at 678, 684, 687; *see Mulder v. PCS Health Sys., Inc.*, 432 F. Supp. 2d 450, 458-59 (D.N.J. 2006) (same).

Plaintiffs' cases have nothing to do with the selection of a PBM. (ECF No. 85 at 30-31.) Their reliance on a U.S. Department of Labor ("DOL") "guidebook" fares no better because it similarly does not address the selection of a PBM or consider circumstances, like here, where hiring a PBM is inextricably intertwined with plan funding and design decisions. Indeed, if the DOL's views are to be considered at all, it recently confirmed its agreement with Supreme Court precedent that plan funding

10

decisions, "includ[ing] plan sponsor 'decisions relating to the timing and amount of contributions,'" are settlor functions reserved to plan sponsors. *See Hutchins v. HP Inc.*, Case No. 25-826, ECF No. 24.1 at 11-14 (9th Cir. July 9, 2025).

Accordingly, there can be no ERISA fiduciary responsibility to monitor fees charged under this PBM agreement. *See Doe One*, 348 F. Supp. 3d at 1001-02 (holding failure-to-monitor PBM claim was "a challenge to the plan design packaged in another guise").[8]

### B.    Plaintiffs Have Not Pled Plausible Fiduciary-Breach Claims.

Even if Wells Fargo were acting in a fiduciary capacity, Plaintiffs have not pled allegations giving rise to an inference of a breach. (ECF No. 79 at 21-30.) Plaintiffs try to sustain their excessive fee claim primarily by comparing component parts of the Plan's prescription drug program (e.g., cost of certain categories of drugs, administrative fees). (ECF No. 85 at 32.)[9] But they fail to distinguish controlling precedent establishing that the only proper comparators are other prescription drug programs in their entirety. (ECF No. 79 at 22-23.)[10]

---

[8] Plaintiffs' contention that Wells Fargo "renegotiated" drug prices following commencement of this action (ECF No. 85 at 5) is disingenuous given their acknowledgement that prices fluctuate with market conditions (ECF No. 64 ¶¶ 59-61).

[9] Plaintiffs' argument that the Court must accept as true their allegations that their comparisons are "meaningful" (ECF No. 85 at 32-34) is contrary to Eighth Circuit precedent. *See, e.g.*, *Matousek*, 51 F.4th at 278-80.

[10] Plaintiffs' reliance on cases holding plaintiffs need not allege every 401(k) plan investment option is imprudent (ECF No. 85 at 36), as support for the idea that they need not allege every prescription drug is overpriced, is misplaced. The apt analogy here would be a requirement that the Plan's fiduciaries prudently monitor the costs of the prescription drug program independent of the costs of the Plan's other benefit programs.

The closest Plaintiffs come to identifying an appropriate comparator for the program as a whole is the PepsiCo plan's program, which they assert is cheaper based on comparing the prices that plan allegedly paid for just 38 drugs also available under the Plan. (ECF No. 85 at 39.) Even then, the Amended Complaint alleges nothing about the quantity of those drugs either plan purchased, or about PepsiCo's plan design, plan services, premiums, scope of coverage, total out-of-pocket costs, or overall drug costs.

Apart from being legally insufficient, Plaintiffs' piecemeal comparisons fail for want of meaningful comparators. Their alternative effort to sustain a claim based on isolated allegations of procedural imprudence is insufficient as well.

1.    *Plaintiffs Have Not Identified Meaningful Benchmarks For Prescription Drug Costs.*

Plaintiffs have not plausibly alleged that the Plan incurred excessive prescription drug costs. Even if, as Plaintiffs contend, NADAC could be characterized as a "benchmark" (*id.* at 34), it is not a "*meaningful* benchmark" merely because Plaintiffs say so, *see, e.g.*, *Matousek*, 51 F.4th at 279-80. Regardless, Plaintiffs do not allege similar plans pay NADAC prices. (ECF No. 79 at 25.)

Furthermore, that a pharmacy may charge uninsured consumers less than what Accredo charges the Plan for some drugs (ECF No. 85 at 43) does not indicate that the Plan overpays for the drugs relative to similar plans, or that similar plans pay less for prescription drugs in the aggregate.

Plaintiffs also contend, on information and belief, that the Plan paid ESI more for certain prescription drugs than other plans paid pass-through PBMs for the same drugs.

(*Id.* at 39.) As explained (ECF No. 79 at 23-24), and as Plaintiffs acknowledge (ECF No. 64 ¶¶ 56-78), pass-through PBMs use materially different business models and thus do not provide a meaningful comparison, *see Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 485-86 (8th Cir. 2020) (concluding plaintiffs' proposed comparators were not meaningful because they were "just different"). There is no basis for Plaintiffs' assertion that Wells Fargo's selection of a "traditional" PBM in and of itself constituted a fiduciary breach (ECF No. 85 at 39), particularly given ESI's industry popularity (ECF No. 57 at 20 n.9 ("[T]he Court struggles to see how Wells Fargo selecting ESI as the Plan's PBM could form a basis for a claim for breach of fiduciary duty under ERISA on the facts alleged here. Plaintiffs themselves acknowledge that ESI is one of the 'Big 3' PBMs.")).

2.    *Plaintiffs Have Not Identified Meaningful Benchmarks Related To Administrative Fees.*

Plaintiffs argue their allegations of excessive administrative fees render their fiduciary-breach claims plausible because (1) five other plans allegedly paid ESI lower per capita fees, and (2) the Plan's per capita administrative fees increased during a period for which Plaintiffs assume ESI provided the same services. (ECF No. 85 at 40-42.) Neither argument has merit.

The first argument hinges on a conclusory allegation that these plans "received equivalent or substantially equivalent PBM services." (*Id.* at 41.) That is insufficient because without alleging what services were received, Plaintiffs cannot identify a meaningful comparator and thus cannot plausibly allege that the Plan's fees were excessive. *See Barrett v. O'Reilly Auto., Inc.*, 112 F.4th 1135, 1140 (8th Cir. 2024)

(rejecting conclusory allegation that "the plan received the same type of services as the comparator plans"); *Matousek*, 51 F.4th at 278-80 (holding plaintiffs failed to "identify similar plans offering the same services [as the plan at issue] for less"). Plaintiffs' reliance on Form 5500 service codes, some of which they erroneously contend are duplicative, does not cure this defect. *See Barrett*, 112 F.4th at 1139-40 (rejecting reliance on service codes for comparator plans because they "included a different bundle").

The second argument fails because the Eighth Circuit has held cost increases alone do not support an inference that the Plan paid more for the same services as similar plans, particularly since Plaintiffs do not identify the specific services ESI provided to the Plan. *See Matousek*, 51 F.4th at 278-79 (dismissing claim alleging defendants permitted expenses to "spiral out of control" because "[e]ven if the fees here look high, we cannot infer imprudence unless similarly sized plans spend less on the same services").

       3.    *Plaintiffs Have Not Pled Plausible Allegations Of An Imprudent Process.*

Plaintiffs cannot resuscitate the Amended Complaint with isolated, unsupported allegations of an imprudent process.

First, Plaintiffs' allegation that, "[o]n information and belief, the process by which Wells Fargo chose and/or retained [ESI] as the Plan's PBM was not an open RFP process" (ECF No. 64 ¶ 111; *see* ECF No. 85 at 40) is conclusory. *See Segura v. Fed. Nat'l Mortg. Ass'n*, 2013 WL 3034096, at *2 (D. Minn. June 17, 2013). In any event, "no legal authority require[s] competitive bidding." *Fritton v. Taylor Corp.*, 2023 WL

5348834, at *4 (D. Minn. Aug. 21, 2023); *see, e.g.*, *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1148, 1156 (10th Cir. 2023); *Albert v. Oshkosh Corp.*, 47 F.4th 570, 579 (7th Cir. 2022).

Second, Plaintiffs' allegation that Wells Fargo retained a conflicted consultant (ECF No. 85 at 40) is conclusory, particularly since it relies on a statement in a consultant's SEC filing (ECF No. 64 ¶ 113) that has no specific connection to Wells Fargo or its contract with ESI, and states that the consultant receives commissions consistent with lawful industry practice. *See* https://www.sec.gov/Archives/edgar/data/ 315293/000162828023004087/aon-20221231.htm.

Third, Plaintiffs' assertion that Wells Fargo mismanaged the Plan by steering participants to obtain specialty drugs from Accredo (ECF No. 85 at 43) relies on a plan design—not fiduciary—decision (*see* Point II.A, *supra*; ECF No. 79 at 29). In any event, this is nothing more than a recharacterized claim about a component of the prescription drug program, which, for the reasons stated, does not permit an inference of imprudence.

Finally, Plaintiffs' contention that the Plan's prescription drug costs impacted their wages (ECF No. 85 at 44) is conclusory, *see, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In Plaintiffs' cited case (ECF No. 85 at 44), wages were contractually subject to decreases if benefit contributions increased.

## C.    Plaintiffs' Prohibited Transaction Claims Should Be Dismissed.

As explained (ECF No. 79 at 18-21, 30; *supra* Point II.A), Plaintiffs' prohibited transaction claims should be dismissed because they do not challenge fiduciary conduct and are conclusory. Nothing in Plaintiffs' Opposition Brief alters this conclusion.

## CONCLUSION

For the reasons stated herein and in Wells Fargo's moving brief, the Amended

Complaint should be dismissed without leave to replead.

Dated: August 7, 2025

Respectfully submitted,

**PROSKAUER ROSE LLP**

By:  */s/ Russell L. Hirschhorn*
Russell L. Hirschhorn (*pro hac vice*)
Joseph E. Clark (*pro hac vice*)
Sydney L. Juliano (*pro hac vice*)
Eleven Times Square
New York, NY 10036
Telephone: (212) 969-3286
Facsimile: (212) 969-2900
rhirschhorn@proskauer.com
jclark@proskauer.com
sjuliano@proskauer.com

**FAEGRE DRINKER BIDDLE & REATH LLP**
Jeffrey P. Justman (#0390413)
Kiera Murphy (#0401027)
90 S. 7th St., Suite 2200
Minneapolis, MN 55402
Telephone: (612) 766-7000
Facsimile: (612) 766-1600
jeff.justman@faegredrinker.com
kiera.murphy@faegredrinker.com

*Counsel for Defendant Wells Fargo & Company*